| WORLD WAR II THEATRE, INC. | * | NO. 2024-CA-0474 |
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| NORMAN WHITE CHIEF | | FOURTH CIRCUIT |
| FINANCIAL OFFICER AND | * | |
| DIRECTOR OF FINANCE, | | STATE OF LOUISIANA |
| CITY OF NEW ORLEANS; | * * * * * * * | |
| ERROLL G. WILLIAMS, | | |
| ASSESSOR, ORLEANS | | |
| PARISH; AND LAWRENCE E. | | |
| CHEHARDY, CHAIRMAN, | | |
| LOUISIANA TAX | | |
| COMMISSION | | |

APPEAL FROM
BOARD OF TAX APPEALS
NO. L01363
Judge Cade R. Cole
* * * * * *
**Judge Monique G. Morial**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge Monique G. Morial)

Cheryl M. Kornick
Robert S. Angelico
Tyler D. Trew
LISKOW & LEWIS, APLC
701 Poydras Street, Suite 5000
New Orleans, LA 70139-5099


COUNSEL FOR PLAINTIFF/APPELLEE

Reese F. Williamson
John J. Weiler
WEILER & REES, LLC
909 Poydras Street
Suite 1250
New Orleans, LA 70112

COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED IN PART,
REVERSED IN PART,
VACATED AND REMANDED
FEBRUARY 18, 2025**

This appeal arises out of an *ad valorem* tax dispute. The issue in this case is whether the Higgins Hotel & Conference Center ("Hotel"), owned and operated by the World War II Theatre, Inc. ("Theatre"), is exempt from *ad valorem* property tax under La. Const. art. VII, Section 21(B). Appellant, Assessor Errol G. Williams, seeks to appeal the Board of Tax Appeal's ("BTA") January 31, 2024 judgment after a trial on the merits which held that Hotel owned by Appellee, the Theatre, was exempt from *ad valorem* taxation. The Assessor also appeals the March 8, 2023 interlocutory judgment denying his peremptory exceptions of no cause of action, no right of action, and prescription. Finally, the Assessor also seeks review of the March 13, 2024 judgment denying his motion for new trial. For the reasons that follow, we affirm the denial of the Assessor's exceptions of no cause of action, no right of action, and prescription, reverse the BTA's denial of the Assessor's motion for new trial, vacate the January 31, 2024 judgment on the merits and remand this matter to the BTA for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

The Theatre is a 501(c)(3) nonprofit corporation, and a wholly owned subsidiary of the National World War II Museum, Inc. ("Museum"). The Theatre owns the Hotel which is located across the street from the Museum. The Theatre filed an application in 2020 for tax exempt status of the Hotel for tax year 2021, which was denied by the Assessor. It is undisputed that the Theatre did not file an application for *ad valorem* exemption in 2021 for the tax year 2022. The Assessor listed the property on the tax rolls for the year 2022. A Personal Property Tax Bill was issued for the Hotel in the amount of $182,596.99 with a delinquency date of March 16, 2022. A Real Property Tax Bill was issued to the Hotel in the amount of $370,425.44 with the same delinquency date. On or about February 15, 2022, the Theatre paid the taxes under protest. Pursuant to La. R.S. 47:2134(C)(1)-(2)[1], the Theatre notified the tax collector of its intention to file suit.

On March 8, 2022, the Theatre filed a Petition to Recover Taxes Paid Under Protest. In its petition, the Theatre alleged that it is entitled to exemption from *ad valorem* taxes pursuant to La. Const. art. VII Section 21(B) and had timely filed

_____

[1] La. R. S. 47:21349 (C)(1)-(2) provides,
(1) A person resisting the payment of an amount of ad valorem tax due or the enforcement of a provision of the ad valorem tax law and thereby intending to maintain a legality challenge shall timely pay the disputed amount due under protest to the officer or officers designated by law for the collection of the tax and shall give such officer or officers, notice at the time of payment of his intention to file suit for the recovery of the protested tax. The portion of the taxes that is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of a suit contesting the legality of the assessment shall not be made subject to the protest. The taxpayer shall submit separate payments for the disputed amount of tax due and the amount that is not in dispute and not subject to the protest. Upon receipt of a notice, the protested amount shall be segregated and held by the collecting officer for a period of thirty days.
(2) A legality challenge suit must be filed within thirty days from the date of the protested payment. If a suit is timely filed contesting the legality of the tax or the enforcement of a provision of the tax law and seeking recovery of the tax, then that portion of the taxes paid that are in dispute shall be further deemed as paid under protest, and that amount shall be segregated and shall be further held pending the outcome of the suit. The portion of the taxes that is paid by the taxpayer to the collecting officer or officers that is neither in dispute nor the subject of a suit contesting the legality of the tax shall not be made subject to the protest.

the application for exemption. The Assessor filed peremptory exceptions and an answer on April 7, 2022. On June 7, 2022, the Theatre filed a motion for summary judgment seeking a judgment that it was entitled to tax exemption for the tax year 2022. On June 15, 2022, the Assessor filed supplemental exceptions of no cause of action, no right of action and prescription alleging that pursuant to La. R.S. 33:2828 (D), the Assessor's exceptions should be sustained because the Theatre failed to timely apply for the tax exemption.

On August 11, 2022, the BTA held a hearing on the Assessor's peremptory exceptions. The BTA rendered judgment and denied the Assessor's exceptions of no cause of action, no right of action and prescription. On November 8, 2022, the Assessor filed a cross motion for summary judgment arguing that the Theatre's tax-exempt status should be denied. On December 8, 2022, the BTA held a hearing on both motions for summary judgment. The BTA rendered judgment denying all the motions for summary judgment on March 8, 2023.

The matter proceeded to trial on September 14, 2023. On December 13, 2023, the BTA issued its Order with Written Reasons. The BTA ruled in favor of the Theatre, finding that the Hotel operates in support of the Museum's mission and the Hotel and its amenities are essential to the Museum's charitable purpose. The BTA also held that the Hotel was exempt from Orleans Parish *ad valorem* taxes for 2022, and that the Theatre was entitled to a full refund of the payments paid under protest.

The Assessor filed a motion for new trial arguing principally that new evidence, an Internal Revenue Service Form 990 for the period July 1, 2021 through June 30, 2022, which was not available at the time of trial, is material to

whether the Hotel qualifies for the exemption. The BTA denied the motion for new trial without written reasons.

## ASSIGNMENTS OF ERROR

On appeal, the Assessor raises five assignments of error: (1) The BTA erred in failing to sustain Assessor Williams' peremptory exceptions for Theatre's, failure to follow statutory procedures under La. R.S. Section 33:2828 as a prerequisite to bringing a legality challenge to the BTA; (2) The BTA erred in its interpretation and application of the constitutional test under La. Const. art. VII, Section 21 (B), because it failed to correctly interpret and apply the legal test to determine whether property is exempt from ad valorem taxation pursuant to La. Const. art. VII, §21 (B); (3) The BTA erred in its application of the legal standards and burden of proof on Theatre, in this case, which is the strict construction legal standard and heightened burden of proof applicable to all tax exemption cases; (4) The BTA erred in ruling that the Hotel met the exemption test under La. Const. art. VII, Section 21 (B) and qualifies for and ad valorem tax exemption; and (5) The BTA erred in denying Assessor Williams' motion for new trial based in part on newly discovered material evidence.

## DISCUSSION

We address the Assessor's first assignment of error: (1) The BTA erred in failing to sustain the Assessor's peremptory exceptions of no cause of action, no right of action, and prescription for the Theatre's failure to timely apply for tax exemption as required under La. R. S. 33:2828.

*Exceptions*

The exception of no cause of action presents a legal question which appellate courts review using the de novo standard. O'Dwyer v. Edwards, 08-1492,

4

p. 3 (La. App. 4 Cir. 6/10/09), 15 So.3d 308, 310. An exception of no cause of action is a peremptory exception. La. C.C.P. art. 927. "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923. "A peremptory exception of no cause of action questions whether the law extends a remedy against a defendant to anyone under the factual allegations of a petition." Cunningham v. City of New Orleans, 21-0532, p. 10 (La. App. 4 Cir. 3/30/22), 336 So.3d 977, 986 (citation omitted). In ruling on an exception of no cause of action, the trial court may only consider the petition, amendments to the petition and documents attached to the petition. Green v. Garcia Victor, 17-0695, p. 5 (La. App 4 Cir. 5/16/18), 248 So.3d 449, 453.

Pursuant to our *de novo* review of the Theatre's petition to recover taxes paid under protest, and the application of the above-cited law, we find that the Theatre, in the four corners petition, pled sufficient facts to allege a cause of action. We find no error in the BTA's denial of the Assessor's peremptory exception of no cause of action.

This court also reviews the exception of no right of action *de novo*. *N. Clark, L.L.C. v. Chisesi*, 16-0599, p. 3 (La. App. 4 Cir. 12/7/16), 206 So.3d 1013, 1015. The exception of no right of action is a peremptory exception. La. C.C.P. art. 927. Pursuant to La. C.C.P. art. 681, an action can only be brought by a "person having real and actual interest which he asserts." In reviewing an exception of no right of action, the court should determine whether the plaintiff has a right to bring the suit, while assuming that the petition states a valid cause of action. *Chisesi*, p. 6, 206 So.3d at 1017. After a *de novo* review of the petition, we find that the

5

Assessor's exception of no right of action lacks merit. As the owner of the Hotel, the Theatre has a substantial interest in whether the Hotel is granted the exemption from *ad valorem* taxes. The trial court did not err in denying the Assessor's exception of no right of action.

The standard of review for an exception of prescription when evidence is introduced at the hearing is the manifest error, or clearly wrong standard. *Barkerding v. Whittaker*, 18-0415, pp. 13-14 (La. App. 4 Cir. 12/28/18), 263 So.3d 1170, 1180 (quoting *In re Med. Rev. Panel of Hurst*, 16-0934, p. 4 (La. App. 4 Cir. 5/3/17), 220 So.3d 121, 125-26). "[I]f the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. . ." *Stobart v. State through Dep't of Transp. & Dev.*, 617 So.2d 880, 882-83 (La. 1993) (citation omitted) (internal quotation omitted). As both parties introduced evidence into the record at the hearing on the Assessor's exception of prescription, a manifest error standard of review is applicable.

The exception of prescription is a peremptory exception. La. C.C.P. art. 927. "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923. "When deciding peremptory exceptions, including prescription, the court should resolve doubts by overruling the exception and giving the litigant its day in court." *Landry v. Blaise, Inc.*, 99-2617, p. 4 (La. App. 4 Cir. 8/2/00), 774 So.2d 187, 190 (citation omitted). The Louisiana jurisprudence has been consistent that prescriptive statutes should be strictly construed in favor of the obligation, and against prescription allowing the plaintiff to proceed with a claim. *Crosby v. Sahuque Realty Co., Inc.*, 12-1537, p. 7 (La. App. 4 Cir. 8/21/13), 122 So.3d 1197, 1202 (citation omitted).

6

The Assessor alleged that the BTA erred in failing to sustain his exception of prescription because of Theatre's failure to follow the procedure proscribed by La. R. S. 33:2828(D). The statute provides the following:

> Each assessor shall evaluate and grant or deny the request for tax exemption, or grant a partial tax exemption based on the assessed value of that proportion of the property not being used for an exempt purpose, by the first day of August of each year which shall determine the liability for or exemption from taxation for the calendar year. Each determination by the assessor shall be subject to review as provided by law.

In support of its exception of prescription, the Assessor insisted that the onus is on the applicant seeking tax exempt status for the 2022 tax year to apply for the exemption before the first day of August, 2021. The Assessor argued that the Theatre's failure to submit an application for the exemption prior to August 1, 2021, is fatal to its claim for exemption. Thus, the Assessor contended that the Theatre was not exempt from *ad valorem* taxation, nor could it recover the taxes paid under protest because its claim had prescribed.

In contrast, the Theatre argued that pursuant to La. R.S. 33:2828(A), the burden was on the Assessor to provide it with an application for exemption. The Theatre acknowledged that it had previously applied for the exemption in 2020 for tax year 2021, but did not apply for the tax year 2022.[2]  However, the Theatre asserted that it paid the taxes prior to the delinquency date and timely filed suit pursuant to La. R. S. 47:2134(C)(1), which provides that:

> A person resisting the payment of an amount of ad valorem tax due or the enforcement of a provision of the ad valorem tax law and thereby intending to maintain a legality challenge shall timely pay the disputed amount due under protest to the officer or officers designated by law for the collection of the tax and shall give such officer or officers, notice at the time of payment of his intention to file suit for the recovery of the protested tax.

---

[2] The parties remain in litigation for tax year 2021. The BTA denied both the Theatre's and the Assessor's Motions for Summary Judgment on the issue of tax exemption. The Theatre filed a Supervisory Writ to this Court in 2021-C-0432 which was denied.

The BTA Judge stated at the hearing on the exceptions: "I don't see anything in (D) that sets a deadline for the taxpayer." He later stated: "But because this is an exception, and the law of the exception is generally you take close questions in favor of maintaining the action, I'm going to deny the exception, [and] let the action proceed." We agree. We find no error in the BTA's ruling and agree that the Theatre's claim has not prescribed because it failed to submit an application for tax exemption before August 1, 2021. We find that the Theatre paid the taxes under protest timely and filed suit according to the statute cited *supra.* Thus, we affirm the decision of the BTA, as it relates to the peremptory exceptions of no cause of action, no right of action and prescription.

*Motion for New Trial*

The Assessor argued the BTA erred in denying his motion for new trial based on newly discovered evidence. The standard of review on a motion for new trial is whether the trial court abused its discretion. The trial court is vested with vast discretion, but it abuses its discretion if it relies on an erroneous view of the law. *LCR-M Ltd. P'ship v. Jim Hotard Props, L.L.C.*, 13-0483, p. 9 (La. App. 4 Cir. 10/9/13), 126 So.3d 668, 675. Although the ruling on a motion for new trial rests within the wide discretion of the trial court, that discretion is not indefinite as it must be exercised with considerable caution. *Rivet v. State, Dep't of Transp & Dev.,* 01-0961, p. 5 (La. 11/28/01), 800 So.2d 777, 781. Thus, a judgment should be set aside when it is not supported by a fair interpretation of the evidence. *Guillory v. Lee,* 09-0075, p. 38 (La. 6/26/09), 16 So.3d 1104, 1131 (quoting *Davis v. Wal–Mart Stores, Inc.,* 00-0445, p. 10 (La. 11/28/00), 774 So.2d 84, 93).

The party bringing a motion for new trial bears the burden to demonstrate that he is entitled to a new trial. *Lepree v. Dorsey*, 22-0853, p. 23 (La. App 4. Cir. 8/11/23), 370 So.3d 1191, 1205 (citations omitted). The jurisprudence has consistently held that "the trial court may summarily deny a motion for new trial if the motion simply reiterates issues thoroughly considered at trial." *Edgefield v. Audubon Nature Inst., Inc.*, 17-1050, p. 5 (La. App. 4 Cir. 9/12/18), 318 So.3d 65, 69 (citation omitted).

A motion for new trial may be granted on peremptory or discretionary grounds. La. C.C.P. art. 1972 provides the peremptory grounds for a motion for new trial. A new trial shall be granted in the following cases:

(1) When the verdict or judgment appears clearly contrary to the law and the evidence.
(2) When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.

La. C.C.P. art. 1973 states that "[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law."

The Assessor's motion for new trial was comprised of three issues: (1) the BTA's failure to consider the legislative history of La. Const. art. VII Section 21(B); (2) relevant evidence that was unavailable at the time of trial demonstrates that the Hotel had increased revenue and unrelated business income; and, (3) the BTA failed to apply the strict construction standard required by the Louisiana Constitution and the applicable exemption statutes to the Theatre. *See Southern Yacht Club v. Zeno*, 12-1309 p. 10 (La. App. 4 Cir. 3/27/13), 112 So.3d 942, 948.

Pursuant to La. C.C.P. art. 1972(2), the Assessor primarily focused on the differences between the evidence presented at trial compared to the newly

discovered IRS Form 990, which the Assessor argued reflected a higher amount of unrelated business income than the Hotel actually produced and reported in tax year 2022. The Assessor argued principally that new evidence, the Internal Revenue Service Form 990 for the period July 1, 2021 through June 30, 2022, is material to whether the Hotel qualifies for the charitable exemption for the 2022 tax year.

At trial, the CEO of the Theatre, Mr. Stephen Watson, testified that the Hotel's primary purpose was to support the charitable mission of the Museum. He stated that at times, the Hotel worked in tandem with the Museum when it hosted special World War II events.  The location of the Hotel was especially important, as it facilitated the easy transport between buildings of World War II veterans, and guests of the hotel who visited the Museum.

During his testimony, Mr. Watson highlighted connections between the Hotel's operation and the Museum's mission: the various bars and amenities, including the "Rosie the Riveter" bar and "Provisions" restaurant located inside the Hotel were themed in accordance with the Museum. The overall aesthetic and décor of the Hotel encapsulated the World War II. Hotel guests seeking to visit the Museum were offered discounted tickets. Mr. Watson further testified that the Hotel's prices were not as competitive as other hotels in the downtown New Orleans area.  However, Mr. Watson admitted that the Hotel's website offered various wedding packages as well as catering services and those offerings did not have an explicit connection with the Museum.  He further acknowledged that some of the bars located in the hotel were accessible from the street, and that patrons did not have to be a Museum visitor or a guest of the Hotel to access these venues. He testified that these commercial activities and the resultant unrelated business

income of the Hotel did not disqualify it from the charitable exemption because it comprised less than twenty-three percent (23%) of the Hotel's profits, and these profits inured to the benefit of the Museum's charitable purpose. He further testified that even with this unrelated business income, the Hotel continued to operate at a loss.

In the motion for new trial, the Assessor argued that the Theatre's Form 990 contradicts Mr. Watson's testimony that the hotel continues to operate at a loss. Instead, the Assessor argued that the tax form demonstrated that the Hotel's profits and unrelated business income have increased in comparison to prior tax years. Specifically, the Assessor contends that the commercial activities of the Hotel have contributed to an increase in the profits as well as the unrelated business taxable income. The tax form evidences an increase of unrelated business income to twenty-eight percent (28%) for the year 2022. This Form 990 contrasts with Mr. Watson's testimony that the Hotel had been operating at a loss, with the unrelated business income at a rate of twenty-three percent (23%).

The BTA Judge acknowledged that the Form 990 presented a different set of facts from those presented at trial, but he declined to consider it and denied the Assessor's motion for new trial. At the hearing, the BTA Judge stated the following: "So, the -- and also, the additional 990, while I don't think controlling, obviously is a different set of facts than the facts were presented about the 990 that we had in the record, but you know, the record is the record. We are going to go with what we've got." The BTA Judge denied the Assessor's motion for new trial, finding that the Theatre had proven its entitlement to the exemption.[3]

_____

[3] We note that the record is devoid of a judgment or written reasons denying the Assessor's motion for new trial, but the transcript clearly reflects the BTA's reasons for denying the motion.

Upon review of the record, we find that the BTA abused its discretion in denying the motion for new trial and not considering the newly discovered evidence provided by the IRS Form 990 during the hearing. The IRS Form 990 was unavailable at trial, but will likely reflect whether the commercial activities of the Hotel continue to relate to the Theatre's charitable exemption at a level that would qualify the Hotel for exemption from *ad valorem* tax. The voluminous testimony and evidence at trial regarding the Hotel's support of the Theatre's mission should be re-considered in light of this newly discovered evidence. Having found a new trial is warranted based upon newly discovered evidence, we decline to address the Assessor's other bases for the motion for new trial. We pretermit discussion of the other assignments of errors numbers two, three and four and remand to the BTA for further proceedings consistent with this opinion.

## DECREE

Accordingly, for the reasons discussed herein, the BTA's judgment overruling the Assessor's exceptions of no cause of action, no right of action, and prescription is affirmed. The BTA's ruling denying the Assessor's motion for new trial is reversed. We vacate the judgment granting the Hotel tax exempt status and remand this matter to the BTA for consideration of the IRS Form 990 in rendering its final judgment on the merits.

**AFFIRMED IN PART,
REVERSED IN PART,
VACATED AND REMANDED**